67 N.W.2d 528 (1954)
In re ESTATE of Katherine Louise HOYT.
H. A. HELSCHER, Administrator of the Estate of Katherine Louise Hoyt, deceased, Appellee,
v.
Ray A. GILBERT, Cross-Petitioner, Appellee,
H. A. Helscher, Administrator of the Estate of Martha Ellen Gilbert, deceased, Keokuk County, Iowa, Appellee,
State Board of Social Welfare, State of Iowa, Intervenor, Appellant.
No. 48623.
Supreme Court of Iowa.
December 14, 1954.
*529 Herman Walter, Sp. Asst. Atty. Gen., and Updegraff & Updegraff, Sigourney, for appellant.
Chas. C. Heninger and F. M. Beatty, Sigourney, for appellees.
THOMPSON, Justice.
The administrator of the estate of Katherine Louise Hoyt having filed an application to sell her interest in certain real estate consisting of a residence property in Sigourney, Keokuk County, to pay costs of administration of her estate, the Iowa State Board of Social Welfare (hereinafter referred to as the board), intervened, asserting title to said realty by virtue of a tax deed. A second count of its petition of intervention alleged that it held certain liens against the real estate because of old age assistance furnished to James Marion Gilbert and Martha Ellen Gilbert, the parents of Katherine Louise Hoyt; but since the trial court granted the relief asked for in this count in full and no appeal has been taken from this judgment we give it no further attention. The court denied the relief prayed by the intervenor on Count I of its application, holding the tax deed void. It is from this judgment we have the present appeal.
James Marion Gilbert acquired title to the real estate whose title is involved in 1920. In July, 1935, he made application for old age assistance, which was granted *530 and payments commenced on August 1, 1935, at the rate of $14 per month. He died intestate a resident of Keokuk County on November 20, 1936, at which time he had received from the intervenor payments totalling $224. A funeral benefit was granted in the sum of $100, making $324 paid to him from the old age assistance funds. His surviving spouse, Martha Ellen Gilbert, was granted old age assistance beginning March 1, 1938, and continued to receive monthly payments until she died intestate a resident of Keokuk County on February 6, 1952. The payments so made totalled $4,432.80 to which was added $150 funeral benefits, in all $4582.80.
James Marion Gilbert left surviving him, in addition to his widow, three children: Jessie Jacobs, Katherine Louise Hoyt, and Ray A. Gilbert. Katherine Louise Hoyt died intestate in Keokuk County on February 22, 1951, leaving no spouse or children surviving. Her mother, Martha Ellen Gilbert, was her sole heir. On October 3, 1952, Jessie Jacobs conveyed her interest in the realty which she had inherited from her father and mother, James Marion Gilbert and Martha Ellen Gilbert, to her brother, Ray A. Gilbert. At the time the proceedings now before us for review were commenced, and except for such rights as the intervenor may have had through its tax deed, title to the real estate in question was therefore in Ray A. Gilbert by virtue of inheritance from his father and mother and the deed from his sister, Jessie Jacobs. The court in granting Count II of the intervener's petition established a lien for the assistance granted James Marion Gilbert against the entire real estate, but gave the board a lien for the payments to Martha Ellen Gilbert against only the undivided five-ninths interest held by her at the time of her death. These liens are made subject to costs of administration and other proper charges, but we have pointed out no appeal has been taken from the judgment on Count II. No question is raised as to the proper filing of notice of the old age assistance grants in the office of the county recorder of Keokuk County. The sole error assigned is that the court erred in determining the board did not acquire legal title to the real estate by virtue of its tax deed.
The sale which culminated in the tax deed relied upon by the board was held on December 6, 1937, and the property was sold for delinquent taxes for the year 1933 and certain special assessments for paving against the property. Tax certificate was issued to one G. G. Shanafelt, and on November 16, 1938, the board procured an assignment of the certificate to itself. On April 25, 1939, it procured a tax deed from the county treasurer and promptly recorded it in the office of the county recorder.
I. The appellees contend that the tax sale on December 6, 1937, and the deed later issued under it were void for various reasons. The first challenge to the validity of the sale and deed is that under Section 6950-g1, Code of Iowa 1935, now Sections 427.9 and 427.11 Code of Iowa 1954, I.C.A., the taxes should have been suspended and no legal sale could be had. The code sections in question provide that all taxes against property of recipients of old age assistance shall be suspended during the time such payments are being made; and, in effect, that such taxes shall remain suspended if the property passes by devise, bequest, or inheritance to the surviving spouse or minor child or children of the assistance beneficiary. Whether this implies, as is forcefully urged, that any sale held in contravention of the statutes and any tax deed issued pursuant thereto are void, we do not decide. It will be noted that at the time of the sale, on December 6, 1937, James Marion Gilbert had been dead for more than one year and so no payments were being made to him; and the payments to Martha Ellen Gilbert did not commence until March 1, 1938. It is true Martha Ellen Gilbert was the surviving spouse; whether the three children who survived their father were minors we are not told, except that the record seems to indicate that Katherine Louise Hoyt and Jessie Jacobs had at least reached their majority by marriage. This might mean the sale was void as to the interest of Martha Ellen Gilbert and valid as to the interests of the children if they were adults.
*531 We forego a determination of the question posed at this point because the record is not clear, and because there are other sufficient reasons which we think make the tax deed void and which uphold the judgment of the able and long experienced trial court.
II. Few rules are more firmly settled in the law than that which holds a mortgagee or other lienholder may not acquire a tax title in derogation of the rights of the holder of the legal title or of holders of superior liens. A lienholder may ordinarily redeem from a tax sale to protect his own interests; but such action is a redemption only. He may not acquire the tax certificate for the purpose of procuring a tax deed thereunder and so divesting his mortgagor or other lienor of his title, or superior lienholders of their rights. For that matter, neither may the mortgagor procure a tax title which strips his mortgagee of his lien. The entire matter is thoroughly analyzed and the Iowa authorities collated and discussed by Justice Bliss, speaking for the court, in Koch v. Kiron State Bank, 230 Iowa 206, 214 to 240, inclusive, 297 N.W. 450, 454 to 463, inclusive, 140 A.L.R. 273. Those interested in the Iowa law on this subject may find it thoroughly set forth in the Kiron case.
There is nothing in the facts before us in the instant case which takes it out of the general rule prohibiting the taking of a tax title by a lienholder in derogation of the rights of the owner of realty. It is true Section 249.20, Code of Iowa 1954, I.C.A., authorizes the board to take an assignment of a certificate of tax sale upon payment of the amount due to the holder in case of redemption. But this does not mean the matter may be pursued to a tax deed hostile to the owner, the recipient of old age assistance. The old age assistance statutes are a form of social legislation, clearly intended to help aged persons in need. It is the evident purpose of the act to keep them in their own homes when possible, rather than to place them in county homes or other charitable institutions. The board is given a lien upon any real estate they may own for such assistance as it furnishes them. If it was the intent of the legislature to abrogate the salutary rule which forbids a lienholder to acquire a tax title as against the lienor, we must assume it would have said so. But no such intent appears. Indeed, the evident purpose to protect the beneficiary of old age assistance in his ownership appears. Section 249.20, supra, is a lengthy statute and cannot be set out here in full. But it must be noted that at one point it provides that the board, if it deems it necessary for the protection of the state, may require a conveyance of the property of an applicant. But the statute then goes on to say that the deed so obtained must contain a reservation of a life estate to the grantor and his wife, and "an option to the grantor and his heirs to purchase said property by repayment of the total amount paid for the benefit of the recipient." Here is a clear indication of the legislative purpose to protect the beneficiary and his heirs against an adverse title acquired by the board. They are given the right to repurchase their property by payment of any sums advanced. They would have no such right if we should hold the tax deed valid in the case at bar.
Nor does it avail the board that it did not assert its claim until after the death of the recipients. If its tax deed was valid at all, it was valid when it obtained it; and if we should so hold, the effect would be that the beneficiaries might have been dispossessed at any time thereafter. Of course the statute permits of no such interpretation. The board, holding liens by virtue of the assistance furnished, could not acquire a tax title in derogation of the title of its beneficiaries. The trial court properly held that its purchase of the outstanding tax certificate was in effect a redemption by a lienholder, and no more.
III. Section 447.12, Code of Iowa 1954, I.C.A., formerly Section 7282, Code of Iowa 1935, provides for proof of service of notice of expiration of the time for redemption from tax sales by the filing of *532 an affidavit showing such service. This affidavit must be filed with the county treasurer, and we have consistently held it is a necessary prerequisite to the issuance of a tax deed.
"* * * the requirements of section 447.12 are mandatory and if the affidavit of service is incomplete and insufficient the right of redemption is not cut off thereby and no valid tax deed can issue." Modern Heat and Power Company v. Bishop Steamotor Corporation, 239 Iowa 1267, 1276, 34 N.W.2d 581, 586. See also Galleger v. Duhigg, 218 Iowa 521, 525-527, 255 N.W. 867.
In the instant case, the purported affidavit filed by the board in attempted compliance with Section 447.12 was made by one Clarence D. Russell. But there is no showing it was made before any person authorized to take or administer oaths, or, for that matter, before anyone. It is signed by Russell, and below his signature appear the words "Notary Public in and for Keokuk County, Iowa." But there is no jurat and no signature of any notary. An affidavit is a written statement under oath made or taken before an authorized officer. 2 C.J.S., Affidavits, § 1; 1 Am. Jur., Affidavits, Section 2; Black's Law Dictionary (2d Ed.) 46; 2 Words and Phrases, p. 641; 1 Bouvier's Law Dictionary, Rawle's Third Revision, p. 158. It has been held by some courts that the signature of the affiant is not essential to a valid affidavit if he has in fact been sworn by an authorized officer; but we know of no authority which holds the administering officer may be entirely dispensed with. So far as the record in this case shows, while the paper masquerading as an affidavit in purported compliance with Section 447.12 was signed, there is no jurat or signature of anyone empowered to administer oaths. In fact there is no showing that any such officer administered an oath or in fact had anything whatever to do with the instrument which the board's agent signed. The paper amounted to no more than an unverified statement and was of course totally insufficient as a foundation for the issuance of a tax deed. Francesconi v. Independent School District, 204 Iowa 307, 214 N.W. 882.
IV. The intervenor-appellant suggests that more than five years have elapsed since the issuance of the tax deed. From this we assume it is attempting to take advantage of Section 448.12, Code of Iowa 1954, I.C.A., which in substantially identical form has been a part of our statutory law since the Revision of 1860. The material part is this: "No action for the recovery of real estate sold for the nonpayment of taxes shall be brought after five years from the execution and recording of the treasurer's deed * * *." The evidence before us shows that James Marion Gilbert and his widow and heirs have been in possession of the real estate in question at all times since 1920. We said in Barrett v. Love, 48 Iowa 103, 106:
"Nothing is said as to possession, but the statutory bar seems to be complete at the expiration of the five years. If, after the expiration of that period, either the purchaser or the owner is compelled to resort to an action for the purpose of vindicating his title or possession, the bar of the statute operates on and is decisive that the action cannot be maintained. No distinction is made between the purchaser and owner; both are alike subject to the provisions of the statute." (Italics supplied.) In referring to the same statute, then Section 7295, Code of Iowa 1924, this court later said:
"This statute operates to bar an action by the holder of the tax title on the expiration of 5 years from the recording of the treasurer's deed." Wallis v. Clinkenbeard, 214 Iowa 343, 348, 242 N.W. 86, 88. See also Brown v. Painter, 38 Iowa 456, and other cases cited in Wallis v. Clinkenbeard, supra.
It thus appears the statute is a two-edged sword, operating in the case at bar to decapitate any claim of the appellant. The board had never had possession, and after *533 the expiration of five years from the date of its tax deed, April 25, 1939, its action to vindicate its title was barred by the statute above quoted.
The judgment of the trial court upon Count I of the intervenor-appellant's application is fully sustained by the reasoning and authorities of Divisions II, III, and IV above. For this reason we find it unnecessary to discuss other defenses urged by the appellees. Affirmed.
All Justices concur.